No. 26,801.

BERTHA RICE WESTERMAN, *Appellant*, v. HENRY WESTERMAN, *Appellee*.

SYLLABUS BY THE COURT.

MARRIAGE—*Annulment—Vacation of Decree—Jurisdiction to Annul.* A woman procured a divorce from her husband, William Rice, in the district court of Norton county, under the law of this state, which provides that it shall be unlawful for either party to a divorce decree to marry within six months from date of decree, which declares such a marriage to be absolutely void, and which provides that every person contracting such a marriage shall be guilty of bigamy and on conviction shall be punished by imprisonment in the penitentiary. Nine days after the decree was entered she was married to Henry Westerman by a justice of the peace at Liberty, Mo., according to the law of that state. Three months later she commenced an action in the district court of Wyandotte county to annul the Missouri marriage. Westerman answered, a hearing was had at which evidence was introduced, and the court entered a decree annulling the Missouri marriage as void. More than six years later, and after Westerman's death, the woman moved to vacate the annulment decree as void for lack of jurisdiction of the court to enter it. *Held*, the motion was properly denied.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCH-INGS, judge. Opinion filed July 10, 1926. Affirmed.

*Richard E. McIntosh, Lester M. Goodell* and *James F. Bell*, all of Topeka, for the appellant.

*C. L. Thompson*, of Hoxie, *E. S. Rice* and *W. S. Rice*, both of Smith Center, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The appeal was taken from an order denying a motion to set aside a judgment as void which purported to annul a marriage.

Plaintiff was formerly the wife of William Rice. On February 9, 1918, she was granted a divorce from her husband by the district court of Norton county. The statute contained, and still contains, the following provisions:

"It shall be unlawful for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement; and if notice be filed and an appeal be commenced as hereinbefore provided, then it shall be unlawful for either party to such cause to marry any other person until the expiration of thirty days from the day on which final judgment shall be

Marriage, 38 C. J. pp. 1276 n. 25, 1348 n. 32, 1350 n. 56, 1360 n. 83.

rendered by the appellate court on such appeal; and every person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marriage be absolutely void.

"Every person convicted of bigamy as such offense is defined in the foregoing section shall be punished by imprisonment in the penitentiary for a term of not less than one year nor more than three years.

"Every decree of divorce shall recite the day and date when the judgment was rendered in the cause, and that the decree does not become absolute and take effect until the expiration of six months from said time." (R. S. 60-1512, 60-1513, 60-1514.)

. The divorce decree complied with the statute. On February 18, 1918, nine days after the decree was entered, plaintiff was married to Henry Westerman by a justice of the peace at Liberty, Mo., according to the law of the state of Missouri. On May 24 plaintiff filed a ·petition to annul the marriage in the district court of Wyandotte county, Kansas. On July 11 Westerman answered. The case was heard on October 12, and was taken under advisement. On December 10 the following decree was entered:

"Plaintiff appears not, either in person or by attorney, but defendant appears by his attorneys, Rice & Rice.

"And the court, having heretofore examined the papers and pleadings filed herein, and having heretofore heard the evidence, doth find:

"That the plaintiff has been duly and legally notified of the pendency of this suit, as she filed her petition herein and waived notice of trial.

"That the allegations contained in plaintiff's petition and admitted by the defendant and those contained in defendant's cross petition are true, and that the defendant is entitled to the relief prayed for.

"That the plaintiff herein was divorced from her husband William Rice, on the 9th day of February, 1918, in the district court of Norton county, Kansas, said decree of divorcement being rendered by said court on said date, and that thereafter, on the 18th day of February, 1918, the plaintiff herein and the defendant herein attempted to enter into a marriage contract at Liberty, Mo., and went through the form· of said ceremony there. That the defendant, at the time of the marriage ceremony at Liberty, Mo., was unaware of the illegality of said marriage, and when he became informed of the same, immediately ceased living with the plaintiff herein, and has not since lived with the said plaintiff.

"The court further finds that the marriage attempted at Liberty, Mo., was in contravention of the decree of divorce theretofore granted the plaintiff, and in contravention and violation of law, and is null and void and of no force and effect, and should be canceled, annulled, set aside and held for naught.

"It is therefore by the court considered, ordered, adjudged and decreed, that the marriage attempted to be consummated between the plaintiff, Bertha Rice Westerman, and the defendant, Henry Westerman, at Liberty, Mo., on

the 18th day of February, 1918, is null and void and of no force and effect, and is hereby annulled, canceled, set aside and held for naught."

The annulment suit was commenced by plaintiff, pursuant to agreement with Westerman, as one of the means of solving the situation in which they found themselves. Property rights were adjusted by a contract signed on April 30, 1918, pursuant to which Westerman paid plaintiff $17,000. Westerman died in the year 1920. Plaintiff says he was worth half a million dollars, and if that be true, it might be worth a quarter of a million dollars to her to be Westerman's widow.

Plaintiff filed her motion to vacate the decree of annulment on April 11, 1925. The motion asserted plaintiff did not bring the annulment action, did not authorize any one to commence it for her, had no notice of the pendency of the action, and had no knowledge of the proceedings or of the decree until approximately three years after the decree was entered. The motion further asserted the court was without jurisdiction to enter any decree annulling the Missouri marriage. The motion was heard on affidavits. One of plaintiff's affidavits undertook to establish domicile and residence of herself and Westerman at Kansas City, Mo., from the day of the Liberty affair forward, and fully supported the allegations of the motion with respect to her utter lack of connection with the annulment suit. She failed to abstract the opposing affidavits, and the certificate to her abstract is not true. The opposing affidavits have been supplied by counter abstract, all the evidence is now before this court just as it was presented to the district court, and this court possesses the same competency to deal with the evidence as the district court. The evidence clearly establishes that, as a part of the settlement with Westerman, it was agreed plaintiff should bring the annulment suit in Wyandotte county, Kansas; that with her authority, knowledge and assent her attorney did bring the suit, and that her attorney subsequently advised her respecting pendency of the proceeding. Plaintiff's affidavit in respect to those matters is so clearly demonstrated to be false, that the district court was authorized to disbelieve, and doubtless did disbelieve, all she said, except, perhaps, that she continued to stay in Missouri after her settlement with Westerman.

District courts of this state have jurisdiction to annul marriages. both by statute (R. S. 60-1515) and by virtue of their general

equity jurisdiction. (*Powell v. Powell,* 18 Kan. 371; *Fuller v. Fuller,* 33 Kan. 582, 7 Pac. 241; *Browning v. Browning,* 89 Kan. 98, 102, 130 Pac. 852.) The statute does not require that the plaintiff in an action to annul a marriage shall be a resident of this state, and an action of that character may be brought in any county where the defendant may be summoned (R. S. 60-508). Voluntary general appearance is equivalent to service of summons (R. S. 60-2515). Therefore the district court of Wyandotte county had jurisdiction of the parties. There remains the question whether it had jurisdiction to decree annulment of the marriage between plaintiff and Westerman.

Plaintiff contends the Missouri marriage was valid. A statute of this state provides that a marriage contracted without this state, valid by the law of the country where it was contracted, shall be valid in all courts and places in this state. (R. S. 23-115.) Besides that, plaintiff contends the statute of this state declaring void and penalizing marriage within six months after decree of divorce has no extraterritorial effect, and under the common law a marriage valid where contracted is valid everywhere. The conclusion is, the district court had no jurisdiction to decree annulment of the Missouri marriage.

It cannot safely be left to plaintiff to dictate when she will be married and when not married. Some court must have authority to determine the question. In her petition to the district court of Wyandotte county she invoked jurisdiction of that court to determine that the Missouri marriage was void, and a decree to that effect was entered. In her motion to vacate she invoked jurisdiction of the same court to determine that the Missouri marriage was valid, and consequently that the decree of annulment was void. Therefore, her present attitude is that the court had jurisdiction to determine the question of validity or invalidity of the marriage, in case and only in case it reached one conclusion and not the other. The fallacy involved has vitiated many an ambitious plea of lack of jurisdiction.

Section 23-115, relating to validity here of marriages lawfully contracted in another country, is open to judicial interpretation. The statute was enacted in 1867, and was an aid to colonization of foreign immigrants in the new state. It is conceivable the word "country" might not have been intended to apply to other states of the

American Union, even although in pioneer days it was not considered good form to inquire too searchingly into the antecedents of new settlers. However that may be, the word country did apply to foreign countries. Suppose a man from a country permitting polygamy were to bring his group of wives, or a woman from a country permitting polyandry were to bring her group of husbands, and were to undertake to enjoy here the marital relations lawful in the country of origin. It is conceivable the statute would be interpreted according to the common conscience of the people of this country, and the man or woman would be restricted to a single spouse. It is also conceivable an incestuous marriage relationship would not be tolerated at all, even though valid where contracted. Considerations such as these have led to recognition of exceptions to the common-law rule that a marriage valid where contracted will be regarded as valid elsewhere. Such an exception exists whenever the legislature has clearly declared that a certain kind of marriage—as a marriage contracted in evasion of its laws—shall be deemed invalid, and generally, whenever a marriage contracted in another state or country is odious to the public policy of the state in which its validity is challenged, it will not be recognized as valid.

The statute making it unlawful for either party to a divorce decree to marry within six months, declaring such marriage to be "absolutely void," and punishing the party contracting such marriage as guilty of bigamy, was enacted in 1889. (Laws 1889, ch. 107, §§ 6, 7.) To permit a divorcee to hasten to Kansas City, or Omaha, or Denver, or Oklahoma City, marry there, and then return to Kansas as lawfully wedded, is not consonant with the spirit of the statute, and it is conceivable the legislature intended such a marriage should be absolutely void, even although it did not in express terms declare that a marriage contracted in evasion of the laws of this state shall not be given effect. This court has not heretofore expressed, and is not now expressing, any opinion on the subject. The court does decide, however, that a district court has jurisdiction to adjudicate whether such a marriage is valid or void, between parties properly before it, in an annulment suit.

As indicated above, at the hearing on the motion to vacate, plaintiff testified by affidavit that she and Westerman did not intend to return to Kansas to live after they were married, but intended to reside permanently in Missouri. As indicated above, her story is

not worthy of credence. At the trial of the annulment suit evidence was introduced and the court found Westerman acted in ignorance of the Kansas law. The evidence may have proved that the parties, being domiciled in Kansas, merely went to Missouri to be married, and fully intended to return at the end of the honeymoon, and to reside, as before, in Kansas, but Westerman's discovery of the Kansas law occasioned a pause in execution of their plans. This court is bound to assume the evidence established a state of facts consonant with soundness of the judgment. But whatever the evidence may have been, the question whether the Missouri marriage was valid or void was a judicial question, which the court was authorized to determine. Its decision might be contrary to all the decided cases, all the textbooks, and all the magazine articles on the subject; it might be subject to reversal on appeal; but it would be erroneous only, and not void for lack of jurisdiction to decide as it did decide.

The conclusion from the foregoing is that the district court of Wyandotte county had jurisdiction of the parties and of the subject matter of the annulment suit; the decree was regularly rendered pursuant to such jurisdiction; the decree is not subject to attack by motion to vacate on the ground it was void; and, no appeal having been taken from the decree, plaintiff is bound by it.

The judgment of the district court is affirmed.