No. 34,502

KATHERINE RAFF TITUS, *Appellant*, v. ADA TITUS, *Appellee*
and *Cross-appellant*.

(97 P. 2d 1113)

.Opinion filed
January 27, 1940.

*E. R. Sloan, W. Glenn Hamilton, Floyd A. Sloan, Eldon R. Sloan,* all of Topeka, and *Laurence Sovik,* of Syracuse, N. Y., for the appellant.

*J. B. Wilson,* of Lawrence, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action in ejectment. The trial court rendered judgment for the defendant. Plaintiff appeals.

On January 30, 1937, one Ward B. Titus, a resident of Douglas county, died intestate. At the time of his death he was the owner of the land in dispute. He left no issue. Two women, the plaintiff and the defendant, are rival claimants for the property.

The plaintiff, Katherine Raff Titus, and Ward B. Titus were married in Albany, N. Y., on the 28th day of November, 1895. A child was born to this marriage, but died at the age of three months. Ward B. Titus was a traveling salesman for a drug firm. About four or five years after this marriage he left his home in New York and Katherine never saw him again. He wrote to her from Ohio a short time after his departure, and thereafter she never heard from him.

Ward B. Titus and the defendant, Ada Titus, were married in Oklahoma on the 10th day of March, 1902. They lived at various places until 1917, when they located in Lawrence, Kan. They lived

together as husband and wife until the death of Titus in 1937. Titus was an optometrist. The property involved in this action was accumulated as a result of the joint labor of Titus and the defendant, Ada.

During the wanderings of Ulysses the forsaken Penelope was not without suitors. Shortly after the departure of Ward B. Titus, the plaintiff, with other members of her family, conducted a boarding house in Binghampton, N. Y. There she met one Fred Middaugh. About this time Katherine stopped using the name of Titus as her surname, and for a time she went by her maiden name, Raff. About 1917 the plaintiff moved into an apartment and Fred Middaugh lived at the same place. Part of the time there were other roomers in the apartment, and part of the time it was occupied only by the plaintiff and Middaugh. About this time plaintiff began to go by the name of Middaugh and held herself out as the wife of Fred Middaugh.

Middaugh was a member of the "Brotherhood of Painters, Decorators and Paperhangers of America" and carried a policy of insurance in that organization. About 1922 the name of the beneficiary in the policy was at the request of Middaugh changed to Katherine Middaugh. Prior to the time this change was made the plaintiff had knowledge that Middaugh intended to insert her name as beneficiary. Middaugh died in Syracuse, N. Y., in 1928. After his death a check for the proceeds of the policy was issued by the organization to "Katherine Middaugh, wife." The check was endorsed by the plaintiff "Katherine Middaugh, wife," and she received the proceeds of the check. In life the plaintiff lived with Middaugh as his wife, and after his death she held herself out as his widow. So far as the record shows, no formal marriage was ever consummated between the plaintiff and Middaugh.

It does not appear that plaintiff was ever in Kansas. The defendant, Ada Titus, is in possession of the real estate described in plaintiff's petition. So far as the record shows, Ward B. Titus and the plaintiff were never divorced.

The trial court returned findings of fact, an outline of which is set forth above. The court found that the plaintiff was not entitled to the land "against a woman, who in good faith, married such man, when such estate was acquired through the joint efforts of such man and woman, who lived together in the state of matrimony for something over thirty-five years and who occupied said real estate as a homestead."

We reach the same conclusion.

In *Shepard v. Carter*, 86 Kan. 125, 119 Pac. 533, it appeared that the husband and wife never lived together after the marriage. The husband left the state, declaring he would obtain a divorce, and returned two years later and stated that he had obtained a divorce. The wife, acting on the belief a divorce had geen granted, married another, and children were born of the marriage. Later the husband married another woman, lived with her about eighteen years, and eight children were born of this marriage. Upon his death, the first wife, claiming no divorce had been granted, asserted a right in his property. The court held that under the facts "it will be presumed the first marriage was dissolved by a divorce" and that when she claimed to inherit the land as the surviving widow of the intestate "it devolved on her to prove that no divorce had been granted."

In *Haywood v. Nichols*, 99 Kan. 138, 160 Pac. 982, the wife of one Pool (acting on the information and belief that Pool had secured a divorce, had married again and had died in the year 1889) married Haywood. She and Haywood lived together as husband and wife until his death sixteen years later. No children were born of the marriage, and it was held she was entitled to the property of Haywood as against his collateral heirs. Citing *Shepard v. Carter*, supra, the court said: "There was a presumption in favor of the validity of the defendant's second marriage which has been described as the strongest known to the law."

In *Kinney v. Woodmen of the World*, 110 Kan. 323, 203 Pac. 723, the syllabus reads:

"Previous to 1890 the plaintiff was the common-law wife of Thomas Kinney. In that year she separated from her husband, and in 1892 she was formally married to her present husband, with whom she has ever since lived, and by whom she has borne children. In 1904 Kinney obtained from a beneficiary society a certificate payable at his death to his wife. Kinney died in 1918, and the plaintiff sued for the proceeds of the certificate. *Held,* it will be presumed the plaintiff's marriage to her present husband was legal; the presumption includes, if necessary, the fact of dissolution of the common-law marriage, by divorce granted to Kinney; and the presumption cannot be overcome, except by proof so cogent as to compel conviction."

The defendant stands before the court as an innocent party. She married the deceased Titus in good faith, lived with him as his wife for thirty-five years, and through the years helped accumulate the property now claimed by the plaintiff. In equity and good con-

science the defendant is entitled to the property. The law presumes the second marriage was valid. As that presumption was not overthrown, the established rule in this state as announced in the authorities above cited compels an affirmance of the judgment.

Judgment affirmed.

THIELE, J., not participating.