No. 34,502

KATHERINE RAFF TITUS, *Appellant*, v. ADA TITUS, *Appellee* and *Cross-appellant.*

(101 P. 2d 872)

Opinion denying rehearing filed May 4, 1940. (For original opinion of affirmance see *ante*, p. 156, 97 P. 2d 1113.)

*E. R. Sloan, W. Glenn Hamilton, Floyd A. Sloan, Eldon R. Sloan,* all of Topeka, and *Laurence Sovik,* of Syracuse, N. Y., for the appellant.

*J. B. Wilson,* of Lawrence, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: Appellant has filed a motion for a rehearing in which the original opinion (*Titus v. Titus*, ante, p. 156, 97 P. 2d 1113) has been challenged on two points.

1. The motion states the appeal was submitted on findings by the trial court "which included a finding that the plaintiff never secured a divorce from Ward B. Titus and he never secured a divorce from her," and that under settled rules we are bound by such findings.

The finding of the court was: *"So far as the record shows,* the plaintiff never secured a divorce from Ward B. Titus and he never secured a divorce from her." (Italics inserted.) Ward B. Titus was married to the plaintiff in 1895. Four or five years later he deserted her, and in 1902, in Oklahoma, he married the defendant. During the intervening years Ward B. Titus may have secured a divorce from the plaintiff. The finding of the court merely stated that "so far as the record shows" he had not secured a decree of divorce. As he may in fact have secured a divorce, there was ample ground for the presumption that his marriage to the defendant was valid.

2. The motion further states:

" . . . The opinion is entirely void of any discussion of the theory upon which the case was decided by the trial court as shown by his conclusion of law, a part of which is set out in the opinion, and which this court says is its conclusion."

The conclusion of the trial court, a part of which was quoted in the original opinion, is as follows:

"1. Where a man and woman are married and the woman, after her husband has been absent for a period of time, uses her maiden name and later. assumes the name, represents herself and appears as the wife of a third party and later, on the death of the third party, claims and receives the proceeds of an insurance policy on his life and generally conducts herself as his widow, she is not entitled to the possession of real estate owned by the man to whom she had been previously married, as against a woman who, in good faith, married such man, when such estate was acquired through the joint efforts of such man and woman, who lived together in the state of matrimony for something over thirty-five years and who occupied said real estate as a homestead."

The opinion states:

"The defendant stands before the court as an innocent party. She married the deceased Titus in good faith, lived with him as his wife for thirty-five years, and through the years helped accumulate the property now claimed by the plaintiff. In equity and good conscience the defendant is entitled to the property. . . ." (p. 158.)

Doubtless the import of this language was overlooked. It was intended to be, and we submit is, an expression of approval of the theory upon which the judgment of the trial court was based. It was a short expression of the general principle of equity, expressed by Chief Judge Cardozo in *Beatty v. Guggenheim Exploration Co.*, 225 N. Y. 380, 386, 122 N. E. 378:

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." (p. 386.)

The same principle was expressed by Dean Roscoe Pound in "The Progress of the Law, Equity," 33 Harv. Law Rev. 420, as follows:

". . . As the chancellor acted *in personam,* one of the most effective remedial expedients at his command was to treat a defendant as if he were a trustee and put pressure upon his person to compel him to act accordingly. . Thus constructive trust could be used in a variety of situations, sometimes to provide a remedy better suited to the circumstances of the particular case, where the suit was founded on another theory, as in cases of reformation, of specific performance, of fraudulent conveyance, and of what the civilian would call exclusion of unworthy heirs, and sometimes to develop a new field of equitable interposition, as in what we have come to think the typical case of constructive trust, namely, specific restitution of a received benefit in order to prevent unjust enrichment." (p. 421.)

The position of the appellant may be stated: (*a*) If the presumption arises that the second marriage was valid, then the defendant inherited the property from her deceased husband, and appellant had no right or claim. As we found ample ground under the facts

found to support the presumption of the validity of the second marriage, it was unnecessary to discuss at length the equitable theory upon which the trial judge proceeded. (b) But if it be conceded that the naked legal title descended to appellant it would not avail her. "In equity and good conscience" she was not entitled to the property. Equity would consider her as trustee, and compel her to act accordingly. On no possible theory was the appellant entitled to recover.

As the contentions raised were considered in the original opinion, a rehearing is unnecessary.

THIELE, J., not participating.

HARVEY, J. (concurring specially): I concurred in the judgment (151 Kan. 156, 97 P. 2d 1113) affirming the judgment of the trial court, and concur in denying the motion for rehearing. I simply wish to add: Since appellant, after she and Ward B. Titus had separated, assumed the status of marriage to another, whether that status amounted to a legal marriage under the laws of the state in which they lived we need not stop to inquire, and since Ward B. Titus contracted and entered into a marriage with defendant in full conformity with the laws of the state where he then was, there is a strong presumption that plaintiff and Ward B. Titus were divorced. There was an affirmative burden on plaintiff to show that no divorce had been procured by either of them. She did not in this case meet that burden of proof.