No. 41,446

ARTHUR L. HARPER, *Appellee*, v. RUTH DUPREE, Alias RUTH HARPER, *Appellant*.

(345 P. 2d 644)

Opinion filed November 7, 1959.

*F. C. Norton*, of Salina, argued the cause, and *H. L. Smither*, of Salina, was with him on the brief for the appellant.

*L. H. Ruppenthal*, of McPherson, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an action to annul a marriage.

Defendant appeals from an order overruling her demurrer to plaintiff's evidence.

Only two questions are presented.

One concerns the competency and admissibility of certain evidence admitted over defendant's objection. The other is whether plaintiff's evidence made out a prima-facie case sufficient to withstand the demurrer.

The action was filed on April 24, 1958. Summarized very briefly, the pleadings allege the following:

The petition alleges that on July 2, 1951, plaintiff and defendant went through the form of a marriage ceremony in Kansas City; that on said date defendant had a husband living from whom she was not then and never has been divorced, and who is now living; that plaintiff at the time was not aware of such fact but relied on representations of defendant that she had been divorced from her former husband; that plaintiff had just recently been informed that defendant's prior marriage had never been dissolved by divorce, or otherwise, and that his "colorable" marriage to defendant should be annulled, set aside and held for naught.

Defendant filed a verified answer in the form of a general denial, and a cross-petition for divorce which alleges:

That on July 2, 1951, she and plaintiff were legally married by the probate judge of Wyandotte county, and that such marriage was consummated by continued cohabitation in McPherson, as husband and wife, until April 18, 1958; that she has performed all of her marital duties, but that plaintiff has been guilty of extreme cruelty and gross neglect of duty toward her; that the parties are the owners of certain described jointly-acquired property, and that she is entitled to a divorce, alimony and attorney fees.

Plaintiff filed a reply to the answer and cross-petition, which, after denying adverse matters contained in that pleading, alleges:

That defendant and one John Dupree were married and were the parents of two daughters, now adults, and that defendant and Dupree and their children were living at Cunningham at the time of their separation in the middle 1930s, at which time defendant took the two daughters to, and lived in, El Dorado; that later Dupree moved to Tulsa county, Oklahoma, and continues to reside there, and that the exact dates of the marriage of defendant to Dupree, their separation, and residences of defendant and Dupree, are not known to plaintiff but are well known to defendant; and that no divorce ever was granted to defendant from Dupree in the

counties of Butler, Kingman or Pratt, or in Tulsa county, Oklahoma. That defendant subsequently lived with one Stout, as husband and wife, and separated from him while so living in the early 1940s, at Nickerson, but that plaintiff does not know, and therefore cannot state, whether defendant ever entered into a colorable marriage with said Stout, or whether such marriage was ever annulled or dissolved. That defendant subsequently entered into a colorable marriage with one Okle, who was, on June 17, 1948, granted a default divorce from defendant on the ground of abandonment, in Harvey county. That plaintiff has performed all of his marital duties, but that defendant has been guilty of extreme cruelty and gross neglect of duty; that defendant had no property of her own at the time of the "colorable" marriage to plaintiff; that the parties have acquired no joint property during their relationship, and that plaintiff is entitled to have their marriage canceled, annulled, set aside and held for naught, or, in the alternative, that he be granted a divorce from defendant.

We are told that a pretrial conference was held on September 17, 1958, but that it was so "inconclusive" that no pretrial order was made.

Notwithstanding that plaintiff, in his pleadings, asked for a decree of divorce in the alternative, his evidence, as abstracted, was confined to the annulment feature of the case and was directed to the sole propostion that defendant and Dupree had never been divorced. His evidence consisted of his own oral testimony and five written exhibits. A brief summary of his testimony follows:

He and defendant became acquainted in 1943 at Nickerson. She was not living with Dupree at the time. Prior to and at the time of their marriage in Kansas City on July 2, 1951, he inquired in "general terms" of defendant whether she was "free" to get married—that is, whether she was divorced. She replied in the affirmative. At no time did he ever know Dupree or his whereabouts, although once in about 1953, when he and defendant were in Tulsa, she "remarked" something to the effect that Dupree then lived in West Tulsa. He testified that he did not know whether Dupree is living or dead, or whether he, Dupree, had ever obtained a divorce. Shortly before this action was filed defendant's mother had made a "remark" to him which caused him to become "suspicious" that defendant and Dupree were not divorced. He

asked defendant about it and she told him she had divorced Dupree in El Dorado.

In addition to the oral testimony just summarized, plaintiff was permitted to introduce—over defendant's objections—certificates of bonded abstracters in Tulsa county, Oklahoma, and in Pratt, Reno, Butler and Kingman counties, respectively, to the effect that the records in the office of the clerk of the district court in each of those respective counties failed to disclose any divorce proceedings between defendant and Dupree.

Thereupon plaintiff rested his case.

Defendant demurred on the ground that no cause of action had been proved.

The demurrer was overruled. Defendant offered no evidence, but appealed, as was her right under the statute (G. S. 1949, 60-3302, *Second*).

Her specifications of error are that the court erred (1) in admitting the abstracters' certificates in evidence, and (2) in overruling her demurrer to the evidence.

With respect to the first proposition, we believe the court erred in admitting in evidence the abstracters' certificates. We are not concerned here with "land titles," or the like—but rather with the claimed invalidity of the marriage of the parties on July 2, 1951, because of the alleged fact that defendant at the time was not divorced from Dupree. We realize that plaintiff was confronted with proving a "negative," so to speak, but, nevertheless, if he desired to introduce court records there was a proper way by which to do so. Under the facts and issues presented the certificates in question were not the best evidence, were hearsay, and were erroneously admitted.

Notwithstanding—and assuming, solely for the sake of argument, that the certificates were competent evidence and were properly admitted and considered by the court—we have no difficulty in holding that plaintiff's evidence, including the certificates, fell far short of establishing a cause of action for annulment of marriage.

Our statute (G. S. 1949, 60-1515) provides that when either of the parties to a marriage shall be incapable, from want of age or understanding, of contracting such marriage, the same may be declared void by the district court in an action brought by the incapable party.

It has been held that the fact the statute enumerates certain grounds for annulling a marriage does not imply that no others exist, and that district courts, independent of statute, have jurisdiction to entertain and adjudicate such an action under their general equity powers. (*Powell v. Powell*, 18 Kan. 371, 381, syl. 5, 26 Am. Rep. 774; *Fuller v. Fuller*, 33 Kan. 582, 7 Pac. 241; *Browning v. Browning*, 89 Kan. 98, 102, 130 Pac. 852, L. R. A. 1916C 737, Ann. Cas. 1914C 1288; *Westerman v. Westerman*, 121 Kan. 501, 503, 504, 247 Pac. 863, and *In re Estate of Crump*, 161 Kan. 154, 160, 166 P. 2d 684.)

The law is well settled with respect to the presumption of validity of a subsequent marriage where an attempt is made to have it annulled on the ground one of the parties thereto was not divorced from his or her spouse at the time of such subsequent marriage.

In 55 C. J. S., Marriage, § 58c., pp. 938, 939, it is said that where annulment is sought on the ground of a prior subsisting marriage, courts will not grant a decree of nullity except on the production of clear, satisfactory and convincing evidence, the reason being the peculiar nature of marriage and the grave consequences attendant on its subversion.

In 35 Am. Jur., Marriage, §§ 195, 216, 218, pp. 306, 322, 323, it is said the majority view is that a second or subsequent marriage of a person is presumed to be valid; that such presumption is stronger than and overcomes or rebuts the presumption of the continuance of the previous marriage, and that the burden of proving the continuance of the previous marriage, and the invalidity of the second marriage is upon the party attacking the validity of the subsequent marriage. It is further said that to overcome the presumption of validity, and to sustain the burden of proving the invalidity of a marriage every reasonable possibility of validity must be negatived, and that the evidence to overcome the presumption of validity of the subsequent marriage must be clear, strong and satisfactory, and so persuasive as to leave no room for reasonable doubt. In other words, it is said that the burden of proving that a divorce has not been granted to either party to a former marriage is substantial and is not met by proof of facts from which mere inferences may be drawn.

In the case of *Routledge v. Githens* (Oregon), reported at 45 A. L. R. 922, it was held that where an existing marriage is shown the presumption of its validity is so strong that proof of a former

subsisting marriage, in order ·to be sufficient to overcome such presumption, must be so cogent and conclusive as to fairly preclude any other result.

· See also the ·annotation on the subject "SECOND MARRIAGE—PRESUMED VALIDITY," at 14 A. L. R. 2d 7, §§ 3, 20, 21.

Our own decisions are in accord with the foregoing principles.

In *Shepard v. Carter*, 86 Kan. 125, 119 Pac. 533, 38 L. R. A. (NS) 568, it was held that the presumption of validity of a subsequent marriage is "one of the strongest known to the law, and those who seek to impeach the second marriage take upon themselves the burden of showing that the first has not been dissolved." (pp. 130, 131.)

To the same effect is *Haywood v. Nichols*, 99 Kan. 138, 160 Pac. 982.

In *Kinney v. Woodmen of the World*, 110 Kan. 323, 203 Pac. 723, it was held that the presumption of validity of a subsequent marriage includes, if necessary, the fact of dissolution of a previous marriage, and that such presumption "cannot be overcome except by proof so cogent as to compel conviction." (p. 326.)

See also *Titus v. Titus*, 151 Kan. 156, 97 P. 2d 1113, and opinion denying rehearing at 151 Kan. 824, 101 P. 2d 872.

The most that can be said of plaintiff's evidence is that he merely had a "suspicion" that defendant and Dupree had never been divorced—apparently based on a "remark" made to him by defendant's mother. He had never known Dupree, did not know his whereabouts, whether he was dead or alive, or whether he, Dupree had ever obtained a divorce. In fact, his testimony indicated clearly that actually he was completely "in the dark" and ignorant of the facts sought to be established. And, solely for the sake of argument, considering the abstracters' certificates which were admitted erroneously, the most that can be said of them is that they were merely "persuasive" of the fact that defendant and Dupree had not been divorced in the several counties mentioned.

The presumption of validity of the marriage of plaintiff and defendant in July, 1951, is "one· of the strongest known to the law." In order to overcome such presumption it was necessary that plaintiff affirmatively establish the nondissolution of defendant's prior marriage to Dupree "by proof so cogent as to compel conviction." It is clear that his evidence failed to meet the burden of proof required in such cases, and the judgment of the trial court overruling defendant's demurrer to the evidence is reversed.