Myrtie HAWKINS, widow of Eber A. Hawkins, Deceased, Plaintiff,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. W–5099.

United States District Court, D. Kansas.

Dec. 20, 1973.

Dana J. Winkler and C. William Cather, of Davis, Bruce, Davis & Winkler, Wichita, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., Benjamin L. Burgess, Jr., Asst. U. S. Atty., Wichita, Kan., Paul P. Cacioppo, Reg. Atty., Reg. VII; Caroline McB. French, Deputy Reg. Atty., Dept. of Health, Education & Welfare, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Chief Judge.

The plaintiff filed a petition under 42 U.S.C. § 405(g) wherein she alleged that the defendant wrongfully denied the plaintiff certain widow's insurance benefits under the Social Security Act. The defendant answered denying that the plaintiff was the lawful widow of Eber A. Hawkins and has submitted a certified copy of the record from the Appeals Council, Social Security Administration, wherein the Appeals Council denied the claim of the plaintiff and awarded the benefits to another. Now pending before the Court are the motions made by both parties for summary judgment. Upon reviewing the record of the Appeals Council, we find that there is no material issue of fact; that the plaintiff's motion should be denied; and that the defendant's motion should be granted.

It appears from the record made by the Appeals Council, that in 1940 Eber Hawkins, who was at that time married to Beulah White Hawkins, met and began living with the plaintiff, Myrtie Traverts, who was at that time married to Fred Traverts. Both knew of the other's marriage, yet held each other out as man and wife. Because of Eber's work, they travelled extensively throughout the country. In November, 1956 Eber obtained a divorce from his wife, Beulah. About this time Myrtie claims that she learned from a relative that her husband, Fred, had divorced her in 1947. At some time between 1957 and 1958 Myrtie became dissatisfied with travelling so much, left Eber, and moved back to Vermont. In April, 1958 Eber married Oma Burkit. In 1963 Eber left Oma at home and rejoined Myrtie in Alabama. Myrtie and Eber moved to Wichita, Kansas, where they resided together until Eber's death in June, 1964.

On December 12, 1968, Oma filed an application for widow's insurance benefits and the Social Security Administration made the award to her effective March, 1968. On August 19, 1969, Myrtie filed an application for the widow's benefits. The Secretary found Myrtie to be the legal widow and terminated Oma's benefits. Oma requested reconsideration without success. On March 16, 1971, a hearing was held at Oma's request in which she appeared and testified. On April 9, 1971, the Administrative Law Judge [ALJ] rendered a decision in favor of Oma, reversing the prior determination. The Appeals Council, on its own motion, reviewed ALJ's decision and made Myrtie a party-in-interest to the proceedings. On January 17, 1973, after receiving additional evidence from both Oma and Myrtie, the Appeals Council affirmed the decision of the ALJ finding Oma to be the widow of the wage earner, Eber Hawkins. Myrtie filed this action seeking review of that determination.

Under 42 U.S.C. § 416(h)(1)(A) the law of the state of the insured's domicile at the time of his death is to govern the determination of who is the lawful widow of the insured. The ALJ and the Appeals Council determined Eber's domicile at the time of his death to be Kansas and that Kansas law governed. Neither of the parties contest that finding.

The ALJ in his opinion of April 9, 1971 [Tr. 37–41], found from the facts that Eber and Myrtie had entered a common law marriage at some time between Eber's divorce from his former wife in 1956 and when Myrtie left Eber in 1958. The ALJ further found that Eber and Oma had, in good faith, entered a ceremonial marriage in 1958. In awarding the benefits to Oma, the ALJ held that, under the law of Kansas [Harper v. Dupree, 185 Kan. 483, 345 P.2d 644 (1959)] Oma's subsequent marriage to Eber enjoyed a presumption of validity over the prior common law marriage of Eber and Myrtie. The ALJ further held that the living arrangement between Eber and Myrtie from 1963 until Eber's death in 1964 was not a common law marriage and was not entitled to the *Harper* presumption of validity over Oma's 1958 marriage to Eber.

The Appeals Council affirmed the award to Oma but upon a different ground. The Appeals Council found from the facts that no common law marriage ever came into existence between Myrtie and Eber for two reasons: First, that a diligent search of the various court records failed to verify Myrtie's claim that her former husband, Fred Traverts, had divorced her; therefore, she lacked capacity to enter a common law marriage with Eber in 1956; and second, that even if Myrtie had capacity to marry Eber, there was no present marriage agreement between them, an essential element to the creation of a common law marriage.

The scope of the Court's review is limited by 42 U.S.C. § 405(g). It provides in pertinent part:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .

The Court in Gardner v. Bishop, 362 F.2d 917 (10th Cir. 1966), stated with respect to this section:

Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' [citing Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 296, 83 L.Ed. 126]. The Supreme Court has also said ' * * * it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [citing National Labor Relations Board v. Columbian Enameling & Stamping Co., Inc., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660]. [362 F.2d, at 919].

The Court in Hedge v. Richardson, 458 F.2d 1065 (10th Cir. 1972), defined the scope of judicial inquiry as follows:

Judicial review under . . . 42 U.S.C. § 405(g), is limited to an inquiry of whether there is substantial evidence on the record as a whole to support the findings of the Secretary. [458 F.2d at 1067].

The plaintiff's contentions are: First, with respect to the purported divorce between Myrtie and Fred Traverts, the law of Kansas, *Harper, supra,* imposes a presumption in favor of a valid second marriage, including the presumption of a valid divorce of the first marriage, second, the statement by the Appeals Council that a diligent search had been made to determine if in fact Fred had ever divorced Myrtie is not supported by the evidence in the record; third, that the clear weight of the evidence supports the ALJ's determination that there was in fact a valid common law marriage between Eber and Myrtie before

Eber's marriage to Oma; and fourth, that the common law marriage to Myrtie made Eber's subsequent marriage to Oma void for lack of capacity of Eber to marry.

The defendant contends that the holding of the Appeals Council was proper and supported by substantial evidence.

■ In Sullivan v. Sullivan, 196 Kan. 705, 413 P.2d 988 (1966), the Kansas Supreme Court stated the essential elements to a common law marriage to be: "(1) capacity of the parties to marry, (2) a present marriage agreement, and (3) a holding out of each other as husband and wife to the public." 196 Kan., at 709, 413 P.2d at 992. As stated by that Court, the question whether each of these elements existed is one of fact. In that case the Court held that a present living arrangement but an agreement to marry in the future is not proof of a common law marriage.

There is no question in this case but that Eber and Myrtie held each other out as husband and wife. They filed joint tax returns as husband and wife; Myrtie assumed the surname of "Hawkins"; and virtually all their neighbors, and most of her family, thought they were married. The only question is whether Myrtie and Eber considered themselves as married at any time between Eber's divorce from Beulah and Eber's ceremonial marriage to Oma.

In a "Statement of Marital Relationship" prepared by Myrtie on August 19, 1969, [Tr. 138–41], Myrtie made these answers to the questions asked:

Q. Did you have an understanding as to your relationship when you began living together?

A. Yes. I knew he was still married, and I considered that I was still married.

Q. Was this understanding later changed?

A. We later learned that we were free to marry. We discussed having a ceremonial marriage, but he said we couldn't be any happier 'than we are now' if we were married.

Q. Did you have any understanding as to how long you would live together?

A. No. Nothing was said about that. We just took it naturally that we would be together I suppose. We didn't discuss it specifically.

Q. Did you believe that your living together made you legally married?

A. Yes. Later on I learned about common law marriage—while we were still living together, and after our divorces, and I believed this made it legal.

Q. Why did you not have a ceremonial marriage?

A. I would have liked to have had one, but we got along so good that it really didn't matter after a while.

Q. After both of you learned that the earlier marriage had ended, did you say anything to each other about your relationship?

A. Yes. I sort of would have liked to get a ceremonial marriage, but he said we couldn't be happier with a ceremonial marriage.

From these questions and answers it appears that Myrtie may have believed that there was a present agreement to be married. On the other hand, it appears that Eber was satisfied with the living arrangement but "dodged" the question of marriage every time Myrtie asked him. Furthermore, Eber's subsequent ceremonial marriage to Oma indicates that he did not think he was married to Myrtie. It appears that Myrtie was fully aware of Eber's ceremonial marriage with Oma in 1958, yet she did not complain nor inquire as to the status of her purported marriage to Eber.

In response to questions asked her by the ALJ [Tr. 58] Oma stated:

Well, when I first met Mr. Hawkins, why, he told me that he was married

when they lived in the hotel there, you know, he was just talkin' and I took it for granted he was married. So, then after we started going together, why —uh—we'd go out to dinner, or he'd maybe take me home from work, you know, and that went on, why, he said he wanted to talk to me one afternoon, and then he told me, he said, well, Myrtie and I weren't married. He said they were just living together . . . and I said, I meant right, said, well, why didn't you marry her, and he said, well, I didn't want to, and I said, well, why can't I be like Myrtie, and I wouldn't have to get married and go through all that. I was teasin', and he said, no, no, you're an entirely different person. He said, I want to marry you. So, then I told him his past didn't matter. I mean, we were going to be married and we'd go from thereon.

Upon this hearsay evidence the Appeals Council concluded that there was no present marriage agreement between Myrtie and Eber and, therefore, there was no common law marriage. Although the Secretary can hear evidence otherwise inadmissible in court, 42 U.S. C. § 405(b), "the overriding question is whether all the evidence before the examiner, including hearsay of substantial and probative value, affords a substantial basis for his decision." Trujillo v. Richardson, 429 F.2d 1149 (10th Cir. 1970).

The Court finds that there is a reasonable inference from the evidence before the Appeals Council to support the finding that there was no present marriage agreement between Eber and Myrtie. Therefore, based on the record as a whole, there is substantial evidence to support the finding of the Council that there was no common law marriage between Eber and Myrtie. In light of our conclusion we need not review the Appeals Council's alternate ground of lack of capacity since all three elements must be present for there to be a common law marriage.

Assuming for the moment that there is no substantial evidence to disprove a common law marriage between Eber and Myrtie, there is a presumption in favor of a valid second marriage in Kansas which would favor Oma's marriage. In Harper v. Dupree, 185 Kan. 483, 345 P.2d 644 (1959), the Kansas Supreme Court held that where two purportedly valid marriages are entered into in good faith, the law will presume the second of the marriages to be valid with the burden on the claimant from the first marriage to rebut that presumption. The presumption includes the fact of dissolution of the previous marriage. There is nothing in the record that indicates an effort in the slightest degree by Myrtie to rebut this presumption. Therefore, Oma was, under either theory, properly awarded the benefits.

The plaintiff argues that the living arrangement entered into again by Eber and Myrtie in 1963 until his death in 1964 was a common law marriage and should have enjoyed the presumption of validity over Oma's ceremonial marriage. The contention is without merit. The ALJ specifically found from the facts, and we think properly so, that no common law marriage was created after Oma's marriage in 1958. Myrtie was fully aware of Eber's marriage to Oma and that no divorce between them had occurred. Under those facts there can be no common law marriage.

It is therefore ordered that the motion of the plaintiff for summary judgment be Denied; that the motion of the defendant for summary judgment be Granted; and that the Clerk enter judgment for the defendant.