In the Matter of TOPEKA MOTOR FREIGHT, INC., Debtor.

Jeff A. ROBERTSON and Ruth A. Robertson, Appellants,

v.

Bruce E. YEAKEL, Trustee, Appellee,

American Oil Company, Intervenor.

No. 75–1951.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 24, 1977.

Decided April 27, 1977.

James L. Grimes, Jr., Topeka, Kan. (Cosgrove, Webb & Oman, Topeka, Kan., on the brief), for Jeff A. Robertson and Ruth A. Robertson, appellants.

D. S. Hults, Lawrence, Kan., for Bruce E. Yeakel, Trustee for Topeka Motor Freight, Inc., appellee.

John Anderson, Jr., Overland Park, Kan. (Anderson, Granger, Nagels & Lastelic, Overland Park, Kan., on the brief), for American Oil Co., intervenor.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This appeal is from an order of the district court, which adopted the report of a Special Master and denied a petition to reclaim property in a bankruptcy proceeding. We find no error and therefore affirm the district court.

Topeka Motor Freight, Inc., a trucking company, was a family-owned corporation in which Jeff Robertson, the father, owned 1,936 of the 2,000 issued shares, with the remaining 64 shares being owned by his two sons, Marvin and Jay Robertson, and their wives. Jeff Robertson, the father, served as the assistant secretary-treasurer of the

corporation, although he did not actually participate in the day-to-day operation of the business, and received no salary. Marvin Robertson, the elder son, was president of the corporation, and was in charge of the Kansas City, Kansas office and was also in charge of most of the financial affairs of the corporation. Jay Robertson, the younger son, served as vice president of the corporation, and was in charge of the Topeka, Kansas terminal. Ruth Robertson, the mother, owned no shares of stock in the company, but had served as secretary-treasurer from 1965 to 1970, when she resigned her office.

Topeka Motor Freight, as indicated, maintained a terminal just outside Topeka, Kansas. The terminal facilities were located on a tract of land consisting of 3.6 acres which was owned by Jeff and Ruth Robertson, the father and mother. Motor Freight leased the terminal facilities from Jeff and Ruth and paid them a monthly rental. Surrounding the terminal facilities was an additional tract of land consisting of 26.4 acres which was also owned by Jeff and Ruth Robertson, and most of which was leased to a nursery. Jeff and Ruth Robertson had acquired the entire acreage, which in reality was but one tract consisting of approximately 30 acres, in about 1964.

Although Jeff Robertson was not actually engaged in the trucking operation, he did have periodic meetings with his sons concerning the affairs of the company. At one of these meetings in January 1970, Marvin Robertson informed his father, Jeff, that the company owed the Internal Revenue Service about $50,000 in unpaid FICA and withholding taxes. Shortly thereafter Marvin and Jeff Robertson conferred with IRS representatives about this delinquency, and apparently a plan was worked out whereby the company would resume making payments to IRS for current withholdings and at the same time would start making payments on the delinquent amounts due.

In January 1971, Jeff and Ruth Robertson were informed by their sons that the IRS had taken a tougher stance and was threatening to close the company if its as-

sets were not in some manner bolstered. There was no conversation as to the amount then owed IRS, but in fact it had increased from the $50,000 owed in January 1970 to approximately $226,000. In order to bolster the general financial position of the company, Jeff and Ruth Robertson on February 4, 1971, conveyed the entire 30-acre tract to the company by general warranty deed, which recited as consideration the sum of one dollar and "other valuable consideration." The deed was duly recorded.

Subsequent to the conveyance, the property was entered on the company's books at a value of $455,231.65. The company ceased making rental payments to the senior Robertsons, assumed the mortgage payments, and paid taxes on the 3.6-acre terminal property. On the adjacent 26.4 acres, however, Jeff and Ruth Robertson continued to collect rent and pay taxes.

The downhill slide of the company persisted and in July 1971 the IRS seized the company's assets. Thereafter, the board of directors for the company, of which Jeff Robertson was a member, authorized a Chapter X reorganization. The Chapter X petition was filed October 13, 1971, and listed as an asset the terminal structure and the tract of land conveyed to the company by the senior Robertsons on February 4, 1971.

The trustee operated the trucking business until September 1972 when he was authorized to enter into an agreement with the McLean Trucking Company, whereby the latter would continue the operation. On October 25, 1973, Jeff Robertson filed in the reorganization proceeding an application to reclaim the property previously conveyed by himself and his wife to the company on February 4, 1971. This application was thereafter amended on January 11, 1974, by adding his wife, Ruth Robertson, as a party. In the meantime, on November 27, 1973, a plan was filed providing for the sale of the company's assets, including its trucking permits, but not including the terminal or the land, to McLean Trucking Company. This plan was approved by the court on December 28, 1973, and the sale

was consummated. From the proceeds derived from the sale the indebtedness then owed IRS, some $314,854.07, was paid in full.

In addition to the IRS claim and the claims of secured creditors, there were unsecured claims in the sum of over $220,000. There has since been a partial pro rata payment of about $50,000 to the unsecured creditors, thereby reducing the claims of the unsecured creditors to around $170,000.

It was in this setting that the district court appointed a Special Master to hear the Roberstons' petition to reclaim the property which they had previously conveyed to the Topeka Motor Freight. The thrust of the petition to reclaim was that the land was conveyed without consideration and that by either mutual or unilateral mistake, the general warranty deed, though absolute on its face, should have provided that when the IRS received payment of the tax deficiencies, the land would be conveyed back to the Robertsons. Accordingly, Robertsons sought either reformation or cancellation of the February 4, 1971, deed.

It was further alleged in the petition to reclaim that again by virtue of either mutual or unilateral mistake, the deed conveyed the entire 30-acre tract, when in reality it was only intended to convey the 3.6-acre tract upon which the terminal facilities were situate. Again reformation or cancellation was sought.

At the hearing before the Special Master the Robertsons were permitted to broaden their application to include a request for the imposition of a constructive trust on the equitable principle of preventing unjust enrichment arising out of fraud or the abuse of a confidential relationship.

■ The Special Master heard testimony from the four Robertsons, and by his findings and conclusions, in effect, recommended that the application to reclaim be denied. Specifically, the Master found that there was no mistake, be it mutual or unilateral; that the sons were guilty of no fraud, be it actual or constructive; that there had been no abuse of any confidential

relationship; and that there was not a failure of consideration. On review, the district court adopted the report of the Special Master. Specifically, the district court held that the Special Master's findings of fact were not clearly erroneous and that his conclusions of law were correct. We agree with the district court's appraisal of the Master's report and accordingly we affirm.

The amended application to reclaim property was based on mutual or, in the alternative, unilateral mistake. The mistake was of two types: (1) Mistake in not placing in the deed a provision that the property would be reconveyed when the debt to IRS had been paid; and (2) mistake in conveying the entire 30-acre tract instead of just the 3.6-acre tract upon which the trucking terminal was located. As indicated above, based on such mistake the Robertsons sought either cancellation or reformation. In this regard the Special Master found that a provision to reconvey was not omitted from the deed because of either mutual or unilateral mistake, nor had the deed because of mistake conveyed the full 30 acres, instead of only the terminal site of some 3.6 acres. The district court did not err in adopting the Master's findings and conclusions on these particular matters. The record supports such findings and they are not clearly erroneous. In such circumstance the district court must uphold the Master's report. Fed.R.Civ.P. 53(e)(2).

On appeal the Robertsons do not really claim that the district court erred in adopting the Master's report as it relates to mistake. Rather it is the appellants' basic position in this Court that the district court committed error in adopting that part of the Master's report which found that there was no fraud or breach of a confidential relationship as would justify the imposition of a constructive trust. In so doing the district court in our view did not err.

■ A constructive trust will be imposed by a court "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Titus v. Titus,* 151 Kan. 824, 101 P.2d 872 (1940). That

this statement of the rule is too broad has been recognized by the Kansas Supreme Court. *Silvers v. Howard,* 106 Kan. 762, 190 P. 1 (1920). In fact, a constructive trust will not be imposed unless an "aroma of wrongdoing permeates the atmosphere." *In re Estate of Zimmerman,* 207 Kan. 354, 485 P.2d 215 (1971).

■ Here appellants do not claim actual fraud by their sons. They urge that there was "constructive fraud" in the form of breach of a confidential relation. Where there is "a confidential relation, a transaction inducted by the relation, and a breach of the confidence reposed," a constructive trust may be imposed. *Silvers v. Howard, supra.*

■ Appellants cite several Kansas cases where a confidential relation was found to exist between parent and child. E. g., *Staab v. Staab,* 160 Kan. 417, 163 P.2d 418 (1945); *Overstreet v. Beadles,* 151 Kan. 842, 101 P.2d 874 (1940); *Silvers v. Howard,* 106 Kan. 762, 190 P. 1 (1920); *Lehrling v. Lehrling,* 84 Kan. 766, 115 P. 556 (1911). None of these cases requires a finding of a confidential relation in the instant case. The mere fact that a conveyance is made between family members and without consideration is insufficient to raise a trust by implication. *Silvers v. Howard, supra; Clester v. Clester,* 90 Kan. 638, 135 P. 996 (1913). In each case in which a trust has been imposed, there have been special circumstances showing reliance upon the family member and some betrayal of a confidence reposed. Here there was no reliance by Jeff or Ruth on their sons. Jeff was himself the majority shareholder and had access to the corporate records. And there was no misrepresentation or wrongdoing by the sons. The simple fact was the Topeka Motor Freight was in a tight financial situation. Out of an understandable desire to help their sons, who were in financially troubled waters, the parents conveyed to the company by general warranty deed the land now sought to be reclaimed.

■ It should be noted that technically this transaction was not between family members at all. The property was transferred from Jeff and Ruth Robertson to a corporation in which Jeff was an officer and in which he owned over 96% and in which the sons, together with their wives, together owned the remaining 4% of the stock. There was no confidential relationship, as such, between Motor Freight and the senior Robertsons.

■ In support of their claim for imposition of a constructive trust and in support of their initial request to set aside the deed, appellants contend that the transfer was unsupported by consideration. The deed recited as consideration the sum of one dollar "and other valuable consideration." Where the validity of a deed duly executed and recorded is called into question for lack of consideration, such must be established by satisfactory and convincing evidence. *Hansen v. Walker,* 175 Kan. 121, 259 P.2d 242 (1953); Kan.Stat.Ann. 16–107 (1974). The Special Master found that the presumption of valid consideration had not been overcome and that the transfer was in fact supported by consideration in the form of various benefits to the grantors. We agree. The conveyance was to the Topeka Motor Freight Company, in which Jeff Robertson, the father, owned 96% of the stock. He had a real interest in seeing that the company remained solvent. There is some suggestion that because Ruth, the mother, owned no stock, she should be treated differently. No authority is cited in support of this, and we decline to do so.

Although counsel in this Court are primarily concerned with the relationship between the senior Robertsons and their two sons, there are others who also have an interest, such as the intervenor, America Oil Company, and other unsecured creditors, who extended credit to Topeka Motor Freight at a time when the latter was the record owner of the 30-acre tract.

■ A bankruptcy court is inherently a court of equity. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). The burden of claiming the right to assets of a bankrupt con-

cern is on the claimant, and all doubt must be resolved in favor of the trustee representing all the creditors. *Schuyler v. Littlefield,* 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806 (1914). Contrary to the assertion of counsel, we do not deem the equities to be with the senior Robertsons.

Judgment affirmed.