**William F. MANIGAN, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

Civ. No. 77–1197.

United States District Court, D. Kansas.

June 13, 1978.

D. Stewart Oswalt, Hutchinson, Kan., for plaintiff.

Stephen K. Lester, Asst. U. S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, District Judge.

Plaintiff brings this action to seek judicial review of the denial of his two claims for benefits; one for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.; the other for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq. The denials are the "final decisions" of the Secretary and therefore this Court may undertake limited review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On May 7, 1976, plaintiff filed an application (Tr. 90–93) to establish a period of disability and to obtain disability insurance benefits, 42 U.S.C. §§ 416(i) and 423. The application received consideration and reconsideration by the Social Security Administration (Tr. 96–97, 101) and the claim was denied.

On the same date, plaintiff filed his application for supplemental security income disability benefits, 42 U.S.C. § 1381a. This application was also denied on reconsideration by the Social Security Administration on September 21, 1976 (Tr. 108).

On January 28, 1977, at plaintiff's request, a hearing was held, at which he appeared and testified. Plaintiff was represented by counsel at the hearing. On February 11, 1977, the Administrative Law Judge [ALJ] made a determination unfavorable to plaintiff. He found that plaintiff was not under a "disability" as defined in the Social Security Act, as amended. Thus, plaintiff was not entitled to a period of disability or to disability insurance benefits under 42 U.S.C. §§ 416(i) and 423, or to supplemental security income under 42 U.S.C. § 1381. On March 21, 1977, the Appeals Council of the Social Security Administration affirmed the hearing determination (Tr. 5). Thus, the determination of the ALJ stands as the final decision of the Secretary. This action was filed May 20, 1977. Plaintiff asserts that there is no substantial evidence to support the Secretary's decision.

Defendant has filed a motion for summary judgment on the pleadings currently on file in this action and the certified transcript of the record of proceedings relating to plaintiff's claim. For the reasons stated herein, we grant the motion.

The facts as outlined in defendant's brief are not in dispute. In summary, the facts indicate that plaintiff has worked primarily at manual labor, including house mover, ranch work, elephant trainer for circus, steel buffing and spraying, and scooping meat for Winchester Packing Company. Plaintiff finished eighth grade in school and has no further education. His verbal I.Q. testing in 1976 was 72. He was born August 27, 1923. In his application for benefits, plaintiff stated that he became unable to work in November 1974, at age 51, because of two hernias. There is no indication in the record that plaintiff has had any employment since November 1974.

Plaintiff testified about his physical condition at the hearing of January 28, 1977, before the ALJ. He stated that he had been injured on at least four different jobs, once injuring his coccyx (tailbone), twice his back and lastly his abdominal muscles. He complained of pains in the chest, back, and stomach, not fully relieved by medications. He stated that his spine aches and spreads to his arm, neck, and right leg and calf. Because of his multiple pain, he felt that he was unable to sit or stand for very long, could not bend, lift, stoop or walk more than one-half block. He said that he uses a walker to get around.

Plaintiff was admitted at Hutchinson Hospital, Hutchinson, Kansas, on February 14, 1974, for evaluation of recurrent headaches. Examination and tests showed that plaintiff had a hiatal hernia. Dr. J. E. McMullen, a surgeon, performed surgery to repair the hiatal hernia. Recovery from surgery was uneventful (Tr. 167). The headaches were thought to be due to tension. When questioned about plaintiff by the Social Security Administration in June, 1976, Dr. McMullen stated that he did not feel that plaintiff's current complaints were due to the hiatal hernia or the repair of it. He felt it was doubtful that plaintiff would ever seek gainful employment on his own initiative.

Plaintiff was admitted to the Hutchinson Hospital again on April 7, 1974, complaining of abdominal pain of acute onset. Final diagnosis was acute gastroenteritis (inflammation of the stomach and intestines). X-rays showed some degenerative changes in the dorsal spine. (Tr. 168–174).

On October 30, 1974, plaintiff was admitted to Hutchinson Hospital complaining of acute epigastric pain (pain in the upper abdomen). Plaintiff stated that he was injured while scooping meat at Winchester's Packing Company. The final diagnosis was strain of the abdominal rectus muscle and mild anxiety depression. (Tr. 175–181).

Plaintiff was admitted to Hutchinson Hospital on November 26, 1974, again complaining of epigastric pain. The only significant physical finding was marked tenderness in the epigastrium. The final diagnosis was abdominal pain and anxiety depressive reaction. (Tr. 182–187).

On March 29, 1975, plaintiff went to the emergency room at Hutchinson Hospital complaining of pain in the chest and back. He said that he slipped and fell in the bathtub striking his upper back and the side of his chest against the tub. No deformity of the spine or back was noted. Fractured ribs were ruled out and the diagnosis was contusion of the back and chest wall. (Tr. 188).

Dr. Jerold Dee Albright, a general practitioner and plaintiff's personal physician in Hutchinson, referred plaintiff to Dr. J. W. Butin, a gastroenterologist, for evaluation of complaints of chest and abdominal pain. On March 31, 1975, plaintiff was admitted to St. Francis Hospital under Dr. Butin's supervision, and remained there until April 10, 1975, undergoing extensive testing and examination. (Tr. 189–204).

During plaintiff's hospitalization he complained of headaches and weakness in the extremities with arm and leg aches following exertion. He also admitted to depression accompanying his problems with health and financial affairs. Plaintiff noted difficulty in sleeping and decreased appetite, and stated he had difficulty in getting his food down and pain in his chest after eating. On physical examination, plaintiff was well developed, well nourished, and appeared not to be in acute distress. Significant physical findings were some prominence of duodenal folds, possibly related to inflammatory disease, a transient stricture (occasional spasm) in the esophagus, and diverticula (pockets in the membrane) in the descending and sigmoid colon. Dr. M. B. McKee, who evaluated plaintiff's heart, found that he did not have significant angina. Dr. John Pearson was consulted concerning psychological profile. Plaintiff's verbal I.Q. tested 72. Dr. Pearson felt plaintiff fit the pattern of a hard working, intellectually and emotionally marginal individual who was denied and postponed his own dependency needs, but given in to them once he had found a socially accepta-

ble rationale for doing so. Dr. Pearson stated that plaintiff had strong unconscious motivations to prolong his convalescence, and characterized plaintiff as undergoing a massive somatization reaction (physical expression of psychological conflicts) partially masking depression. Final diagnosis was (1) abnormal esophageal motility, characterized by lack of peristaltic contraction in distal esophagus, probably secondary to vagal denervation (problems with food moving through the esophagus), (2) no evidence of coronary eschemia (blood flow to heart is normal), (3) massive somatization reaction with underlying depression, (4) diverticular disease of left colon, and (5) hypertriglyceridemia (fats in the blood).

On May 5, 1975, plaintiff was admitted to Hutchinson Hospital with pain in the right calf and in the left side of the chest. Thrombophlebitis (inflammation of a vein) in the right lower leg was diagnosed. Plaintiff responded quickly to anti-coagulant medication, and when he was discharged on May 15, 1975, he was totally free of symptoms. (Tr. 205–213).

In August, 1975, plaintiff was seen at Hutchinson Hospital for complaints of epigastric and lower chest pain. An upper gastrointestinal series disclosed a recurrence of a moderate sized sliding hiatal hernia with evidence of free esophageal reflux (back flow from stomach). Anxiety depressive reaction was also diagnosed. Plaintiff's condition improved and medication was prescribed. (Tr. 214–219).

A report of contact with Dr. Albright was made on September 10, 1975. Dr. Albright indicated that plaintiff suffers severe spasms of the abdomen, shortness of breath, and dizzy spells when he gets tense and angry. Dr. Albright indicated that plaintiff was not aware that his emotional tensions caused this difficulty. The report states that "Dr. Albright sees this man as an emotional cripple and he said the man has tried to get work, but people just will not hire him basically because they know that he will get these anxiety types of attacks and lose work." (Tr. 220) In a report June 7, 1976 (Tr. 222), Dr. Albright had the following to say about plaintiff's pain:

> [The severe intermittent abdominal pain] has required hospitalization on a number of different occasions. . . . These pains can be extremely severe. They occur in the epigastric region and radiate up into his chest. Often they are associated with changes in position. He cannot tolerate any lifting whatsoever. At this point we know that he has a slight recurrence of his hiatal hernia. He has also developed a fairly large ventral hernia on the abdomen. He has been seen in consultation by several other doctors, and we all feel that these findings do not account for the type of pain that he has. At this time, we do not have a good explanation for the etiology of his pain. The pain does seem very real and it has incapacitated this person. He has been unable to perform any type of work for close to two years now, and it is my impression that he probably will continue to have the same problems.

Dr. Frederick H. Moe, a psychiatrist, examined plaintiff and his findings on July 8, 1976 (Tr. 223–224). Dr. Moe classified plaintiff as being of low-average intelligence, and noted plaintiff's complaints of pain. He stated:

> Mr. Manigan is seen as a person who tends to use physical symptoms to get what he wants. Evidently he has been quite successful at it in the past. His complaints at this time are so heavily physical it is my feeling that the disability judgment must be issued by the physicians who are aware of his somatic problems. From the mental standpoint, he is in a sense disabled from working because he is completely obsessed with his somatic problems. The reality of his somatic status is unknown to me at this time and therefore rather difficult to assess. However, I do get a rather definite impression that even though he does have somatic issues that need to be dealt with medically and surgically perhaps, that he does somatize excessively and that he is probably quite manipulative in using so-

matic symptoms in obtaining his own ends. Otherwise he demonstrates no psychiatric disturbance. (Tr. 224).

On August 5, 1976, plaintiff was admitted to Hutchinson Hospital, again with abdominal pain, which he associated with bending or lifting. An endoscopy of the upper gastrointestinal tract was performed, and it was felt that the cause of plaintiff's pain was mild reflux esophagitis (inflammation of the esophagus caused by reflux of acid and pepsin from the stomach), and reflux induced esophageal spasm. Dr. Daniel C. Foss, who had examined plaintiff on this hospital visit, saw him again August 20, 1976. Dr. Foss reported that plaintiff's symptoms seemed improved though he still complained of some chest pains and periodic difficulty with swallowing. Dr. Foss said: "It was my feeling at this time that Mr. Manigan will probably continue to suffer from symptoms of chronic reflux with esophageal spasm." Dr. Foss did not believe that further surgical procedures were necessary unless the spasms became worse. (Tr. 225–26).

Plaintiff was examined by Dr. Thomas A. Bauer in October 1976. Dr. Bauer attempted treadmill electrocardiography, but it was not done because of plaintiff's lack of cooperation. In Dr. Bauer's opinion, plaintiff's symptoms and behavior were exaggerated and reflected functional disease (without physical basis). (Tr. 230).

Plaintiff was admitted to the Halstead Hospital on October 26, 1976, complaining of back and abdominal pain. Examination revealed a hiatal hernia, a small ventral hernia, an old compression fracture of the first lumbar vertebra, and minimal degenerative joint disease of the lumbar spine. Treatment consisted of back and pelvic traction. Plaintiff was discharged on November 1, 1976, to continue medication at home. (Tr. 234).

On January 14, 1976, Dr. Albright was deposed for purposes of a workman's compensation claim by plaintiff (Tr. 240–272). Dr. Albright said that he considered plaintiff 100 per cent disabled with 30 per cent attributable to his physical problems and 70 per cent related to emotional and family problems. Classifying plaintiff's complaints of pain as being due to conversion hysteria, Dr. Albright explained that he believed that plaintiff was not faking his pain, but that it was an unconscious manifestation of his emotional problems. Finally, the doctor said he thought that "if we could change his home environment that we could manage the rest of his problems so that he could become employable." (Tr. 267–269).

In a report dated January 31, 1977, three days after the hearing before the ALJ, Dr. Albright reported that he had seen plaintiff for complaints of pain in the back, neck and arms, that examination showed plaintiff had osteoarthritic problems, and that he had been placed in a cervical collar and started on antiinflammatory medication. Dr. Albright said:

This, in association with all of the other medical problems that he has, will definitely prevent him from holding any type of job. I expect this disability to be permanent. (Tr. 276).

In his evaluation of the evidence, the ALJ noted the somatic nature of plaintiff's complaints as opined by several physicians. The ALJ said:

Our evaluation of all the medical evidence does not reveal the existence of any physical or mental impairments, which considered singly or in combination, are of sufficient severity to support the high degree of pain and restriction alleged by the claimant. In conjunction with the lack of specific medical findings consistent with severe pain and our less than completely favorable assessment of his credibility, we decline to attach persuasive weight to the claimant's subjective complaints. (Tr. 11)

The ALJ found the following:

\*　　\*　　\*　　\*　　\*　　\*

4. The claimant's impairments are of insufficient severity to support the degree of incapacity alleged.

5. Considering the claimant's residual physical capacity and his vocational

background, he is able to perform his usual work activity as a laborer in the meat packing industry.

6. The claimant was not prevented from engaging in any substantial gainful activity for any continuous period beginning on or before the date of this decision which lasted or could be expected to last for at least twelve months.

7. The claimant was not under a "disability" as defined in the Social Security Act, as amended, at any time prior to the date of this decision.

The requirements for a disability determination are statutorily created and are not in dispute. 42 U.S.C. §§ 416(i), 423, 1382(c).

■ It is well settled that in reviewing a social security case of this kind, a court is not authorized to re-weigh the evidence; its limited function is to determine whether the Secretary's findings of fact are supported by substantial evidence and the inferences drawn therefrom are reasonable.[1] *Richardson v. Perales,* 402 U.S. 389, 28 L.Ed.2d 842, 91 S.Ct. 1420 (1971); *Trujillo v. Richardson,* 429 F.2d 1149 (10th Cir. 1970). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support the Secretary's conclusion. *Richardson v. Perales, supra; Johnson v. Finch,* 437 F.2d 1321 (10th Cir. 1971). The claimant has the burden of proving some medically determinable impairment which prevents him from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1) and (3); *Lucas v. Richardson,* 348 F.Supp. 1156 (D.Kan.1972). The question is not whether the claimant is unable to return to his previous work, but rather whether considering his age, education, and work experience, he is unable to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Relevant evidence includes objective medical facts, expert medical opinion, subjective evidence of pain and disability, and claimant's present age, educational background and work history. *Keef v. Weinberger,* 404 F.Supp. 1193 (D.Kan.1975). A statement by a physician that an individual is or is not disabled and unable to work is a conclusion upon the ultimate issue to be decided by the Secretary, and is not determinative of the question of whether the claimant is disabled. The weight to be given such a statement depends on the extent to which it is supported by scientific and complete medical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment. 20 C.F.R. § 404.1526; *Lucas v. Richardson, supra.*

■ Plaintiff's primary complaint is a subjective statement of inability to work because of pain. Such a statement is difficult to prove or disprove by evidence. Nevertheless, the Secretary must make a decision and the Court must determine whether it is supported by substantial evidence. *Dvorak v. Celebrezze,* 345 F.2d 894 (10 Cir. 1965). Pain may render a person disabled within the meaning of the Social Security Act, but not all pain is disabling. *Roark v. Secretary of HEW,* 433 F.Supp. 643 (E.D.Mo.1977). The inability of a person to work without some pain does not mean he is disabled. *Keef v. Weinberger, supra; Wren v. Weinberger,* 390 F.Supp. 507 (D.Kan.1975); *Adams v. Richardson,* 336 F.Supp. 983 (D.Kan.1972). Subjective symptoms of pain must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment. *Dvorak v. Celebrezze, supra. See generally Keef v. Weinberger, supra.*

■ The record indicates that the ALJ considered all evidence in the case, including subjective complaints of pain. He evaluated these complaints with consideration for credibility, and made a less than favorable assessment of plaintiff's credibility. (Tr. 11). There was little medical evidence

---

1. As to the claim for supplemental security income benefits, this Court is precluded from reviewing the facts. The decision of the Secretary as to any question of fact is final and non-reviewable as to plaintiff's eligibility for supplemental security income benefits. 42 U.S.C. § 1383(c)(3).

of impairment. Although plaintiff has problems with hernias and with his esophagus, there was no medical testimony that these conditions *per se* were disabling. On the contrary, the medical testimony indicated that these conditions would not account for the pain plaintiff complained of. The weight of medical testimony indicates that plaintiff's pain is psychological rather than physical in nature. Although Dr. Albright's medical opinion is that plaintiff is disabled, this Court is not bound by it, especially in light of other medical opinion that plaintiff is not disabled. In his brief in opposition to defendant's motion for summary judgment, plaintiff urges the Court to consider a letter submitted to the ALJ written by Dr. Albright on January 31, 1978, "where he feels this man is genuinely disabled and is physically disabled and definitely of a permanent nature. He also indicated that his prior rating concerning the 70% emotional problem was in error at that time and after watching this man struggle with as many problems as he had during the past two years he would conclude that his physical problems were 100% disabling." This letter is not a part of the record before this Court. Even if it were, it amounts to nothing more than additional and cumulative medical evidence, and this Court will not relitigate the medical issues. See *Bradley v. Califano,* 573 F.2d 28 (10th Cir. 1978).

The Secretary's finding that Manigan was not disabled from engaging in substantial gainful employment will be affirmed.

IT IS THEREFORE ORDERED that the Secretary's motion for summary judgment be, and it is hereby, granted.