Connie L. ASH, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. No. 87–1728–T.

United States District Court, D. Kansas.

Oct. 16, 1990.

David H.M. Gray, Gragert, Hiebert, Gray & Woodring, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the plaintiff's motion for summary judgment (Doc. 14) and the defendant's motion to affirm the decision of the Secretary (Doc. 19). This is a proceeding under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. On December 8, 1986, plaintiff filed an application for disability benefits under Title II. Tr. 36–39. Plaintiff's claim was denied initially, upon reconsideration, and following a hearing at which she appeared pro se. Tr. 6–13. The Appeals Council of the Social Security Administration denied plaintiff's request for review on October 28, 1987. Tr. 3–4. On December 28, 1987, plaintiff filed this action.

On July 1, 1988, on the motion of the parties, this court remanded this action to the Secretary for the taking of testimony of a vocational expert and for the Administrative Law Judge (ALJ) to make findings on the claimant's credibility. Doc. 9. The ALJ conducted a supplemental hearing on August 22, 1988 and issued his recommended decision on September 8, 1988 that plaintiff was not under a disability as defined in the Social Security Act. Tr. 120–28. On September 26, 1988, the Appeals Council adopted the findings and conclusions of the ALJ's recommended decision. Tr. 118–19.

On October 3, 1988, plaintiff requested reopening of the Appeals Council's decision for consideration of additional evidence which the Appeals Council failed to consider. On October 24, 1988, on the motion of the parties, the court again remanded the case to the Secretary. Doc. 12. The Appeals Council issued a supplemental decision on November 30, 1988, but did not change its prior decision. Tr. 260–62. This stands as the final decision of the Secretary.

The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, ..." Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971). It is not the duty of the court to reweigh the evidence. *Garrett v. Califano*, 460 F.Supp. 888, 890 (D.Kan.1978); *Manigan v. Califano*, 453 F.Supp. 1080, 1086 (D.Kan.1978). Substantial evidence, however, must be more than a mere scintilla. *Perales*, 402 U.S. at 403, 91 S.Ct. at 1428. This court cannot affirm the Secretary's decision by isolating a few facts and calling them "substantial evidence." *Cline v. Califano*, No. 78–4166 (D.Kan., August 31, 1979). It is the court's duty to scrutinize the entire record to determine whether the Secretary's conclusions are rational. *Keef v. Weinberger*, 404 F.Supp. 1193, 1196 (D.Kan.1975). In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir. 1965).

For determining whether a Social Security claimant is disabled, the Secretary has developed a five step sequential evaluation. 20 C.F.R. § 404.1520; *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988). If the claimant fails at any of the steps where he or she bears the burden of proof (steps one through four), consideration of any subsequent steps is unnecessary.

The relevant inquiry at step one is whether the claimant is engaged in substantial gainful activity. If not, step two requires the factfinder to determine whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987). Step three entails determining "whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.* If no equivalency, the claimant must show at step four that the "impairment prevents the claimant from performing work he has performed in the past." *Id.* At the fifth step, the factfinder must determine whether the claimant has the residual functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Id.* The Secretary bears the burden of proof at step five. *Id.* 107 S.Ct. at 2294 n. 5; *Williams,* 844 F.2d at 751.

In her application for disability benefits, plaintiff stated that she was born on December 31, 1948, and alleged disability beginning September 1, 1986, due to multiple sclerosis. Tr. 36. Plaintiff has been employed as an office manager, gift shop owner, and insurance salesperson. She worked in insurance sales from October 1981 through September 1986.

Plaintiff was hospitalized at Wesley Medical Center from September 15, through September 18, 1986, for a left C5–6 protruded disc. Secondary diagnoses were multiple sclerosis, vascular headache, chronic depressive reaction, and multiple cutaneous nevi. She was given a myelogram and the cutaneous nevi were removed. Tr. 83–84. Her chief complaint upon hospitalization was weakness in her left upper arm. Tr. 84. She was given traction and physical therapy and she improved dramatically. Tr. 85. Her neurologist, Lauren K. Welch, M.D., indicated in a December 17, 1986 letter that she was functioning normally neurologically without debility or incapacitation. Tr. 92.

In progress notes from December 16, 1986 through October 27, 1987, Dr. Welch documented common migraine syndrome, chronic depressive-anxiety reaction, and multiple sclerosis, in complete remission. Numerous medications are documented, including Lasix, Slow–K, Elavil, Lithium, Valium, and Inderal. Tr. 250–55.

Emergency room records document treatment for migraine headaches with injections of Stadol and/or Vistaril on a number of occasions. In 1986, plaintiff was treated at the Lindsborg Hospital Emergency Room for headaches on the following dates: February 23, February 27, April 7, April 27, May 7, May 29, June 14, June 26, July 1, July 7, and November 29. In 1987, plaintiff was treated for headaches on: February 9, June 7, June 22, July 6, July 14, July 16, July 26, August 5, August 21, August 23, October 26, November 26 and November 29. In 1988, plaintiff was treated for headaches on: April 21 and July 7. Tr. 228–45; 248–49.

Medical records of Dr. Fredrickson document numerous office visits for treatment of migraine headaches with injections of Stadol and/or Vistaril. Tr. 199–227. In 1986, plaintiff was treated for migraine headaches on the following dates: January 3, January 7, February 23, April 7, April 22, May 12, May 20, June 6, June 13, July 1 (two injections listed: Vistaril 75 mg/Stadol 2 mg and Vistaril 75 mg/Stadol 1 mg) July 25, August 15, October 2, October 21, October 30. In 1987 plaintiff was treated for migraine headaches on the following dates: January 29, March 10, March 16, March 31, April 1, April 24, April 29, May 13, May 22, July 2, July 17, September 14, September 24, November 12, November 18, November 19. In 1988: February 8, February 23, April 13, April 22, and June 28. Tr. 199–210.

Plaintiff's treating physician, Dr. Fredrickson, stated that plaintiff has severe and incapacitating migraine headaches on the average once every one or two weeks. The headaches and their recovery lasts approximately two days. Dr. Fredrickson stated that plaintiff's headaches prevented her from being a stable and reliable employee in any occupation, since she would not be able to attend work with sufficient regularity to satisfy even an unusually tolerant employer. Dr. Fredrickson opined that plaintiff was disabled and had been since at least September 1, 1986. R. 266.

Plaintiff's weight was being treated by C.C. Cunnick, D.O. On June 2, 1988, plaintiff was approximately 100 pounds overweight. Dr. Cunnick opined that her weight problem, secondary to depression and medication for treatment of her multiple sclerosis, could be disabling. Tr. 256.

A neuropsychological evaluation was performed February 21, 1988 by Marvin J. Parrish, Ph.D. Dr. Parrish noted that plaintiff's performance on neuropsychological measures was "consistent with mild impairment of adaptive abilities" and that the results of a Wechsler Adult Intelligence Scale–Revised (WAIS–R) indicated that plaintiff's performance was "probably somewhat diminished from premorbid levels." Tr. 182. Dr. Parrish stated that a Minnesota Multiphasic Personality Inventory (MMPI) indicated that plaintiff "may be inclined to become overinvolved in her concerns about physical dysfunction and illness." Tr. 182–83. Dr. Parrish diagnosed mixed organic brain syndrome and psychological factors affecting physical condition. Tr. 183.

Plaintiff testified at the second hearing that she experiences a migraine headache approximately once a week. Along with the pain of the migraine, plaintiff suffers nausea. Plaintiff testified that she usually ends up in the hospital for an injection, although if she is able to catch the migraine early enough, she can take oral medication. The shots she receives for the migraine make her sleep for about eight hours and keep her groggy for another eight hours thereafter. Each headache and

recovery spans approximately two days. Tr. 142–43.

Plaintiff testified that she had difficulty with her vision because of the medications she takes. Her vision varies from day to day. Her vision gets worse before a migraine. Tr. 143–45. Plaintiff also testified regarding difficulties with her right elbow and her left knee caused by arthritis. Tr. 145–47. Plaintiff described constant fatigue, anger, depression, and a lack of motivation. Tr. 148–50.

Plaintiff testified that, on a good day, her daily activities included getting the children off to school, picking up the house, general house duties, and resting a lot. Tr. 150. On other days, she would either have a headache or feel sleepy. On these days, she would perform a minimum of household duties, and would spend the day watching television or sleeping. Tr. 151.

Plaintiff's husband testified that plaintiff, who had previously been an active person, spent most of her time in bed or sleeping in a chair. Tr. 154.

Vocational expert Cindy A. Younger testified at the second hearing. The ALJ related the following impairments to Ms. Younger: headaches, problems with right knee, residual effects of multiple sclerosis, mixed organic brain syndrome, trouble with memory, problems with stress, depression, and lack of motivation. Ms. Younger testified that if plaintiff's complaints were true, those impairments would preclude plaintiff from performing not only light duty positions, but would preclude her from performing sedentary work as well. Tr. 160–61.

The ALJ asked Ms. Younger if plaintiff would be able to perform sedentary work if plaintiff's headaches were not as severe as described, if her memory was sufficient, and if plaintiff had the residual functional capacity to do sedentary work. Tr. 161. The vocational expert responded that plaintiff had the transferable skills to perform any of several sedentary jobs, including proofreader and security monitor. Ms. Younger indicated that if plaintiff's vision was a factor, a position such as security monitor would not be appropriate. Tr.

161–64. On cross-examination, Ms. Younger testified that vision problems would impact on all the positions she previously described, except for the position of ticket seller. Tr. 165.

Ms. Younger testified that if plaintiff's vision was impaired periodically, with blurred vision during and after her headaches and during her recovery period, which usually spans a two day period, and if plaintiff had headaches approximately once a week, that level of impairment would preclude plaintiff from working in the previously described positions. Tr. 165. Ms. Younger further testified that the psychological impairments described by Dr. Parrish would preclude all work. Tr. 166.

In his recommended decision, the ALJ found that plaintiff satisfied step one of the sequential evaluation, since plaintiff was not engaged in substantial gainful activity. At step two, the ALJ found that the plaintiff's impairments were severe. At step three, the ALJ found that plaintiff's impairments did not meet or equal the listed impairments. Tr. 122.

At the fourth and fifth steps of the sequential evaluation, the ALJ noted that he was required to determine whether plaintiff could return to her past work, and if not, whether she could make a vocational adjustment to other types of work which exist is significant numbers in the national economy. To make this assessment, the ALJ noted that he needed to define plaintiff's residual functional capacity. Tr. 125.

The ALJ discussed plaintiff's physical limitations and concluded that plaintiff was at least physically capable of performing sedentary work. The ALJ found credibility in the allegations of stress intolerance, finding that plaintiff would be unable to deal with more than routine, unskilled work in low stress situations. Tr. 125. The ALJ found "it would not be unreasonable to conclude" that plaintiff's migraines "would or could appear during periods of undue stress and during those periods diminish her functioning somewhat." Tr. 126. The ALJ opined that the plaintiff could function in an unskilled, low stress sedentary position and that the elimination of stressful work should greatly alleviate her headaches. The ALJ determined that plaintiff could not return to her prior stressful work of insurance sales, but would be capable of performing jobs as indicated by the vocational expert. Tr. 126. The ALJ concluded that "although the claimant has credible non-exertional limitations which restrict her to unskilled low stress work, the vocational expert enumerated a number of positions which would accommodate those limitations." Those jobs exist in significant numbers in the national economy. Consequently, the ALJ concluded that the plaintiff was not under a "disability" as defined by the Social Security Act. Tr. 126.

In his motion to affirm, the Secretary concedes that plaintiff's most persistent medical problem appears to be her migraine headaches. The Secretary argues that, contrary to plaintiff's testimony, she did not go to the emergency room once a week for injections for her migraines. The Secretary argues that the record shows she went to the emergency room fourteen times during 1987 for treatment of migraines, and that ten of those fourteen visits were made during the evening hours or at night. The Secretary concludes that plaintiff's headaches occur less frequently than alleged and mainly after normal working hours.

▬ To the extent the Secretary is arguing that plaintiff's testimony about her headaches was not credible, the court must reject this credibility determination. The Secretary's role at this stage of the proceedings does not include making credibility assessments. The ALJ made credibility determinations. The ALJ did not reject plaintiff's complaints of migraines as incredible. Indeed, the ALJ noted that plaintiff was treated for migraine headaches rather frequently. Tr. 123. The Secretary has failed to consider the number of visits plaintiff made to the doctor during office hours for treatment of migraines. The Secretary failed to address the fact that the record evidence indicates persistent migraines during a time when plaintiff was not engaged in any substantial gainful activity. Finally, the Secretary failed to con-

sider the uncontradicted evidence that each headache and recovery period spans approximately two days. Thus, even if plaintiff suffered a migraine after normal working hours, she would be unable to attend work the next day.

The ALJ's conclusion that the elimination of stressful work should greatly alleviate the plaintiff's headaches (Tr. 126) finds no support in the record. The evidence indicates that plaintiff suffers severe migraines on a regular basis even though she is not employed. There is no evidence in the record to support the conclusion that the elimination of stress in general or stressful work in particular would alleviate her headaches.

■ The purpose of vocational expert testimony is to determine whether jobs exist for someone with the claimant's precise disabilities. *Jelinek v. Bowen*, 870 F.2d 457, 459 (8th Cir.1989). Such testimony is normally elicited by hypothetical questions. However, vocational testimony elicited by hypothetical questions that do not relate with precision the claimant's impairments does not constitute substantial evidence to support the Secretary's decision. *Id.* at 461. A hypothetical question in which the ALJ assumes the claimant can perform light or sedentary work "not only begs the question, it also ignores the whole purpose of vocational expert testimony, which is to assess whether jobs exist for a person with the claimant's precise disabilities." *Gilliam v. Califano*, 620 F.2d 691, 694 n. 1 (8th Cir.1980). It is error for the ALJ to ask the vocational expert to assume the claimant has the residual functional capacity to perform sedentary work. *Bastian v. Schweiker*, 712 F.2d 1278, 1282 n. 5 (8th Cir.1983).

■ The testimony of the vocational expert does not support the findings of the ALJ. Several of the ALJ's questions to the expert assumed the fact to be proved—that plaintiff could perform sedentary work. In response to a question which listed all of plaintiff's impairments, the vocational expert testified that those impairments would preclude plaintiff from sedentary employment. Tr. 161. The ALJ told the expert to assume that plaintiff had the residual functional capacity to perform sedentary work and then asked whether plaintiff could do sedentary work. Tr. 161. The expert then listed several jobs that a person with the residual functional capacity to perform sedentary work could do. Tr. 162.

On cross examination, when all of plaintiff's limitations were considered, the vocational expert testified that plaintiff could not perform any work. Tr. 165–66. In his final question, the ALJ again told the expert to assume that plaintiff could perform sedentary work and asked if there were jobs available which she could perform. Tr. 167.

■ When the vocational expert was asked specific questions about the effects of plaintiff's impairments, she testified that plaintiff could not work. When a vocational expert is asked a hypothetical question based on substantial evidence, the ALJ cannot ignore unfavorable answers. *Campbell v. Bowen*, 822 F.2d 1518, 1523 n. 6 (10th Cir.1987). Here the ALJ improperly ignored unfavorable answers to questions posed both by the ALJ himself and by plaintiff's counsel.

■ The burden was on the Secretary to show that plaintiff could perform substantial gainful activity despite her impairments. The Secretary's decision that plaintiff could perform sedentary work is not supported by substantial evidence. The testimony of the vocational expert provides substantial evidence that plaintiff cannot perform sedentary work. There is no medical or other evidence in the record to the contrary. The record shows that plaintiff cannot perform sedentary work, which is the lowest grade of work recognized by the regulations. Since additional factfinding would serve no purpose, the court reverses and remands to the Secretary with directions to award disability benefits to the plaintiff.

**IT IS BY THE COURT THEREFORE ORDERED** that defendant's motion to affirm (Doc. 19) is hereby denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Doc.

14) is hereby granted. The decision of the Secretary is reversed and this action is remanded to the Secretary with directions to award disability benefits to plaintiff.