98 F.3d 1341
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Barbara E. DEVOLL, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.
*
 No. 95-1166.
 United States Court of Appeals, Sixth Circuit.
 Oct. 1, 1996.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 94-10009; Robert H. Cleland, Judge.
 E.D.Mich.
 REVERSED.
 Before: JONES, BOGGS, COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Barbara DeVoll appeals the final decision of the Commissioner of Social Security denying her disability insurance benefits. The Commissioner affirmed the finding of an Administrative Law Judge (ALJ) that DeVoll was not disabled within the meaning of the Social Security Act ("Act"). After DeVoll sought judicial review, the district court awarded summary judgment to the Commissioner. The sole issue on appeal is whether the findings of the administrative law judge (ALJ) were supported by substantial evidence. We decide that issue in the negative, and thus reverse the district court.
 
 
 2
 DeVoll was a nurse's aide. She holds a GED diploma and has taken some college courses. She has been treated by chiropractor Paul Rumph for back pain since 1982. On May 19, 1988, DeVoll was rear-ended in an automobile accident and injured her back. From May 20, 1988 to December 5, 1988, she consulted Rumph. She further consulted orthopedic surgeon R. Rogers in June of 1988 and Lionel Glass in August of 1988. These physicians diagnosed DeVoll with a back sprain and administered conservative treatment. DeVoll was subsequently hospitalized for back pain from November 10 to November 15, 1988, and was diagnosed with a muscular and ligament sprain as well as a bulging disc in her back. On December 7, 1988, after suffering further pain, DeVoll consulted nuerosurgeon Hari Chopra, who was unable to identify positively the cause of her pain.
 
 
 3
 On January 27, 1989, Dr. Rogers drafted a report which concluded that further treatment would not be necessary. See J.A. at 197. On June 16, 1989, Dr. Martin Pevzner saw DeVoll. X-rays revealed an erosion and false widening of the sacroiliac joints. He prescribed Indocin, an anti-inflammatory drug. This was the last treatment DeVoll received before her disability insurance expired on December 31, 1989.
 
 
 4
 On February 10, 1990, an MRI was performed on DeVoll. It revealed no new problems. On May 17, 1990, DeVoll went to the office of neurosurgeon Manoucher Gueramy crying and complaining of pain. He found that she had limited back motion, but all else was normal. Fearful of surgery, DeVoll told Gueramy that she only wanted conservative treatment. Gueramy then wrote DeVoll's insurance carrier, recommending a referral to a pain management clinic for treatment of her physical and emotional pain.
 
 
 5
 Throughout these months of treatment, DeVoll was a self-described "basket case." She testified that she was in pain every day. J.A. at 33-34. She could stand for only twenty minutes at a time and could sit for thirty minutes at a time. Id. Whatever relief she received from pain medication was only temporary. Id. She had entertained thoughts of, and once attempted, suicide. Id.
 
 
 6
 On March 30, 1992, DeVoll applied for disability benefits under §§ 216(i) and 223 of the Act. She claimed that she was "unable to work because of [her] disabling condition on May 19, 1988," and that she was "still disabled." J.A. at 48. On September 24 and October 1, 1992, on a referral by her attorney, DeVoll was treated by Dr. George Drozd, a psychologist. After running a battery of tests, he determined that she suffered from a "significant affective and characterological dysfunction which appears to be long standing in nature and likely exacerbated by events surrounding and following her automobile accident in May of 1988." J.A. at 224. Consequently, Drozd concluded that DeVoll was unemployable, and needed two to five years of psychological intervention.
 
 
 7
 DeVoll's application was denied initially and on reconsideration. On August 3, 1993, DeVoll's case was heard by an ALJ. On August 26, 1993, the ALJ denied DeVoll benefits. He reasoned that: 1) she was not disabled prior to December 31, 1989, when her insurance expired; 2) she was not precluded from doing other work; and 3) that Drozd's findings did not deserve a "high degree of credibility," and even if they did, they could not relate back to the time DeVoll was insured. J.A. at 15-16. The Appeal's Council denied DeVoll's request for review on November 16, 1993, thereby making the ALJ decision the final decision of the Commissioner.
 
 
 8
 On January 11, 1994, DeVoll filed an action in the United States District Court for the Eastern District of Michigan, seeking judicial review under 42 U.S.C. § 405(g). The parties filed cross-motions for summary judgment. On October 17, 1994, the magistrate issued a Report and Recommendation, which proposed that DeVoll's Motion be granted and the case be remanded to the ALJ for further proceedings. The district court, disagreed, believing that the ALJ's decision was supported by substantial evidence. Accordingly, the district court rejected the magistrate's findings and awarded summary judgment to the Commissioner. This appeal followed.
 
 
 9
 Judicial review of this decision is authorized under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). In reviewing an agency's factual determinations, this court must determine whether those decisions were supported by substantial evidence. Id.; Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 467 (1968); Peabody Coal Co. v. Holskey, 888 F.2d 440, 441 (6th Cir.1991). When determining whether the Commissioner's findings are supported by substantial evidence, we examine the evidence in the record "taken as a whole," and " 'must take into account whatever in the record fairly detracts from its weight,' " Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).
 
 
 10
 The Commissioner, not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly. See Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir.1990). The Commissioner weighs credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Where substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc).
 
 
 11
 When a claimant asserts that she suffers from a disability, she must establish: 1) that she is not working; 2) that she suffers from a "severe" impairment; 3) that her alleged disability is recognized as one warranting relief; 4) that her residual functional capacity renders her unable to perform at her past work;[2] and 5) that her residual functional capacity renders her incapable of performing any other work. 20 C.F.R. § 404.1520 (1996); see also Mowery v. Heckler, 771 F.2d 966, 969-70 (6th Cir.1985). The Commissioner must determine the onset date of disability. Titles II and XVI: Onset of Disability, Soc.Sec.Rul. 83-20, Soc.Sec.Rep.Svc., 1983 WL 31249.
 
 
 12
 The issue in this case is whether the ALJ's decision that DeVoll did not suffer from a severe mental impairment was supported by substantial evidence. A mental impairment must be demonstrated by medically accepted clinical techniques. 42 U.S.C. § 423(d)(3). In addition, the ALJ may consider expert medical testimony, medical evidence, subjective evidence of pain and suffering, and the claimant's age, educational background, and work history. See Manigan v. Califano, 453 F.Supp. 1080, 1086 (D.Kan.1978). Moreover, "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time." Begley v. Mathews, 544 F.2d 1345, 1354 (6th Cir.1976) (citing Wigmore, Evidence §§ 225, 233 (3d ed. 1940)). Nevertheless, where a claimant attempts to relate subsequent findings of disability back to the period during which she was insured, she must present sufficient corroborative evidence from the insured period to support that claim. See Liebisch v. Secretary of Health and Human Servs., No. 93-3122, slip. op. at 3 (6th Cir. Mar. 30, 1994) (unpublished per curiam) (citing King v. Secretary of Health and Human Servs., 896 F.2d 204, 206 (6th Cir.1990)).
 
 
 13
 Furthermore, the ALJ may collect additional evidence to make a determination of mental disability. Under § 404.1520a, the ALJ may call upon a medical examiner to assist him in making his these findings. While an examiner is not required in every case, "in any case where there is evidence which indicates the existence of a mental impairment, [an initial determination of disability] shall be made only if the [ALJ] has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable functional capacity assessment." 42 U.S.C. § 421(h).
 
 
 14
 In the instant case, DeVoll proffers Dr. Drozd's clinical findings to establish that she suffered from a mental impairment during her insured period. She further cites as corroborative evidence: 1) her January 1989 visit to Dr. Rogers where she complained that her nerves were bad; 2) her June 1989 visit to Dr. Pevzner, where Pevzner was compelled to cite her "inappropriate" laughter in his findings regarding her lower back pain (J.A. at 213); and 3) her May 1990 visit to Dr. Gueramy, when Gueramy wrote that she "came to the office crying" and was "tremendously depressed because of the continuation of the pain," and thereafter prescribed therapy and antidepressants. DeVoll's Br. at 12; J.A. at 217 (Gueramy report). Thus, DeVoll has presented evidence which suggests the existence of a mental disability during her insured period.
 
 
 15
 The ALJ, however, found that: 1) Drozd's findings were not credible; 2) the fact that DeVoll's lawyer referred her to Drozd detracted from DeVoll's claim of mental impairment; and 3) the corroborative evidence was speculative. J.A. at 16. We believe that this decision is not supported by substantial evidence. While the Commissioner's brief takes great pains to emphasize the weaknesses in DeVoll's evidence, neither the Commissioner nor the ALJ could point to any evidence which suggested the contrary. More importantly, as the magistrate noted, the ALJ erred in failing to retain a medical advisor to assist him in making this finding. Therefore, we believe that the ALJ's decision was not supported by substantial evidence.
 
 
 16
 Our conclusion is supported by our previous decision in Blankenship v. Bowen, 874 F.2d 1116 (6th Cir.1989). In that case, the claimant had injured his back while working in a coal mine in 1979. In 1981, a psychiatrist had detected signs of psychiatric problems which were likely exacerbated by his back injury and which rendered him 30% disabled. Id. at 1118. Subsequently, in 1982, a psychiatrist diagnosed him with a schizoid personality. Id. Neither of these psychiatrists were able to fully diagnose claimant's malady due to an incomplete record. In 1985, after his insurance period had expired, he underwent a second psychiatric test and was diagnosed with schizophreniform disorder which rendered him 100% disabled. Id. at 1120. Claimant then applied for disability insurance benefits, and after a hearing, the ALJ denied benefits, reasoning that the onset of claimant's disability commenced after the insured period. Id. The ALJ further disregarded the 1982 diagnosis. This court reversed. In doing so, we reasoned that the ALJ erred in disregarding the 1982 findings in the absence of evidence to contradict those findings. As a result, we remanded the case to the ALJ to augment the evidence in the record and to retain a medical advisor to help him determine the onset date. Id. at 1124.
 
 
 17
 We believe that the Blankenship decision controls the outcome of this case. DeVoll has claimed that she suffers from acute psychological problems, and has presented evidence to support that claim. The ALJ should not reject this claim out of hand unless he can cite to evidence in the record that warrants a denial of the claim. Id. at 1121 (quoting Paulin v. Bowen, 817 F.2d 865, 873-74 (D.C.Cir.1987)). Consequently, when a claimant presents evidence that she suffers from a mental impairment, the ALJ should make every attempt to complete the record by retaining expert assistance under § 404.1520a.[3] Id. at 1124; see also Shields v. Sullivan, 801 F.Supp. 151, 155 (N.D.Ill.1992). Thus, we REVERSE the decision of the district court and REMAND the case to the ALJ with instructions to retain a medical advisor to assist him in determining whether DeVoll suffers from a severe mental impairment, and if so, whether she suffered from that impairment during her insured period.
 
 
 18
 BOGGS, Circuit Judge, dissenting.
 
 
 19
 The court holds that the findings of the ALJ were not supported by substantial evidence, resting on what it deems to be the controlling authority of Blankenship v. Bowen, 874 F.2d 1116 (6th Cir.1989). However, I believe that Blankenship, while perhaps interesting in connection with this case, is not truly relevant.
 
 
 20
 In Blankenship, the claimant was concededly disabled four months after the end of his insured period. Five years earlier, his mental problems resulted in a diagnosis of 30% permanent disability, and three years earlier he had been specifically diagnosed with schizoid personality. Id. at 1118-19. Therefore, the only question was the rate of decline between these dates, and whether his status declined into disability while he was still insured. Under those circumstances, we held that the ALJ could not merely assume that all of the decline had occurred immediately prior to the later finding of disability. This was particularly true because the accepted diagnosis of disability was only four months after the end of the insured period.
 
 
 21
 In our case, there has been no finding of disability, at any time. While it is certainly true that the evidence of Devoll's mental problems is much stronger now than it was in 1989, when her insured statues expired, there is considerable evidence that she was never disabled, even at the time of the hearing.
 
 
 22
 Dr. Drozd's analysis, the best evidence for any disability, occurred nearly three years after the end of the insured period. The only evidence of any mental difficulty prior to the expiration of the insured period is modest: "my nerves are shot"; "inappropriate laughter" and the like. While this may be some evidence of minor difficulties at that time, it is certainly not enough to upset the substantial evidence supporting the ALJ's conclusion that she was not disabled at that time.
 
 
 23
 Her best evidence that is at all close in time to the expiration of the insured period is the report of Dr. Gueramy, five months after the end of the period. Though Gueramy gives a conclusory account of the extent of her pain, her physical reports at about that time were mostly normal. The material the court cites at page 3 as to her debilitated condition in early 1990 does not come from Gueramy's or any other contemporaneous report. It comes from Devoll's testimony more than three years later, giving her version of events (compare JA 33-34 with JA 216-17).
 
 
 24
 I therefore dissent from what will, I suspect, be a largely futile remand.
 
 
 
 *
 Pursuant to the Social Security Independence and Improvements Act of 1994, Public Law 103-296, § 106(d), 108 Stat. 1464, 1476 (1994) (effective March 31, 1995), the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security ("Commissioner"). Accordingly, the Commissioner is substituted as defendant for Donna E. Shalala, Secretary of Health and Human Services. Although Secretary Shalala was responsible for the actions of the Social Security Administration at the time of the final decision, we refer to the defendant as the Commissioner
 
 
 [2]
 "Past work" or "past relevant work" is defined as that work which qualifies as substantial gainful activity and that work at which the claimant has become adept through her work experience. See 20 C.F.R. §§ 404.1520(d)-(e), 404.1560. Generally, the Commissioner will only consider work experience which the claimant has accrued in the fifteen years preceding her alleged disability
 
 
 [3]
 We do not purport to pass judgment on the saliency of the evidence presented by DeVoll. We merely believe that the issue of whether DeVoll suffered from a mental disability cannot be resolved on the record as it currently stands. Cases such as this warrant a remand for further consideration. See Faucher v. Secretary of Health and Human Servs., 17 F.3d 171, 176 (6th Cir.1994)